UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REGAL GAMES, LLC,<br><br>    *Plaintiff*,<br><br>v.<br><br>SELLERX EIGHT GMBH d/b/a SELLERX,<br><br>    *Defendant*. | Civil Action No. 1:22-cv-7455<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Regal Games, LLC ("Regal" or "Plaintiff"), by and through its undersigned counsel, hereby alleges as follows:

**NATURE OF THE ACTION**

1. This is an action arising out of Defendant SellerX Eight GmbH's ("SellerX's," "Defendant's," or as defined in the Agreement, the "Buyer's") purposeful avoidance of its obligations under an asset purchase agreement by and between Regal and Defendant (hereinafter the "Agreement")[1], including Defendant's failure to pay the substantial remaining contractual consideration due in connection with its purchase of Chalk City—a product line of branded sidewalk chalk and assets related thereto—and, following its default and breach, failing to transfer Chalk City back to Regal, as explicitly required by the Agreement.

2. The Agreement was entered into by and between the parties on April 1, 2021 (hereinafter the "Effective Date") and involved the purchase and sale of substantially all of the assets of Regal's Chalk City product line, including but not limited to its Amazon.com marketplace

---

[1] A copy of the Agreement is appended hereto as "Exhibit A."

product listings, inventory, and associated intellectual property (collectively, "Chalk City" or as defined in the Agreement, the "Assets").

3. Under the Agreement, Defendant agreed to purchase Chalk City for consideration consisting of up-front cash payments, a "Deferred Payment" of up to $900,000, and an uncapped "Earn-Out Payment."

4. The Earn-Out Payment was tied to the performance of the Chalk City assets in a one-year period following the Effective Date of the Agreement (the "Earn Out Period"). *See* Exhibit A at §§ 4, 5. The Deferred Payment was tied to the performance of the Chalk City assets in the period between May 1, 2021 and April 30, 2022 (the "Trailing Period"). *Id*. The Trailing Period was intentionally calculated to include the 2022 Easter season, the most important period for sidewalk chalk sales.

5. Under a separate best-efforts provision in the Agreement, Defendant was required to make "all possible good faith efforts to achieve income levels that [would] trigger the Deferred Payment," including but not limited to meeting a set of explicit, clearly defined and objective criteria explained in additional detail herein. *Id*. at § 14(b).

6. The parties explicitly agreed that if Defendant failed to take the actions required of it under the Agreement, Plaintiff would be entitled to payment-in-full of the entire Deferred Payment. *Id*.

7. Moreover, the parties further agreed that Defendant's failure to timely complete the Deferred Payment would constitute "Buyer's Default," which would entitle Plaintiff to full possession of Chalk City. *Id*. at § 11.

8. Defendant was also required under the Agreement to provide to Plaintiff a "Deferred and Earn-Out Payment Statement," 14 days following the conclusion of the Trailing

2

Period, together with "reasonable documentation supporting the information set forth in the Deferred and Earn-Out Payment Statement." *Id*. at § 5. The same provision permitted Plaintiff and its accountants to make inquiries of Defendant and its accountants regarding calculation of such payments. *Id*. It also required Defendant to negotiate in good faith to the extent any disputes arose between the parties with respect to the calculation of the Earn-Out Payment or Deferred Payment. *Id*.

9. During the course of the Trailing Period, Defendant egregiously breached the explicit obligations set forth in Section 14 of the Agreement, by failing to take "all possible good faith efforts" to trigger the Deferred Payment, much less take the minimum efforts explicitly required under the Agreement to promote and increase sales of the Chalk City product line. To add insult to injury, at the conclusion of the Trailing Period, Defendant provided a purported "Deferred and Earn-Out Payment Statement" completely devoid of any supporting documentation in material breach of the agreement.

10. Plaintiff notified Defendant of its obligation with respect to the Deferred Payment in May 2022. In response, Defendant flatly disavowed its contractual obligations and attempted, without any basis in fact or under the Agreement, to avoid liability for its payment obligations. Accordingly, Plaintiff provided Defendant with a notice of breach for Buyer's Default. To date, Defendant has failed to cure the breach.

11. Plaintiff brings this action for breach of contract and declaratory judgment. Plaintiff seeks to preserve and clarify its rights to payment and the return of Chalk City under the Agreement. Plaintiff additionally seeks compensatory damages, specific performance as described more fully herein, its costs and attorney's fees in accordance with the Agreement, and pre- and post-judgment interest.

**PARTIES**

12. Plaintiff Regal Games, LLC is a limited liability company with its principal place of business in Arlington Heights, Illinois. Regal was founded in 1941 and its founder, Erich Spitzner, invented more than 50 different games. Today Regal continues to produce games loved by families across the country, as well as grow the company in new categories by creating new and innovative family-friendly products.

13. Defendant SellerX is a German Gesellschaft mit beschränkter Haftung with its principal place of business in Berlin, Germany. Defendant is a venture capital backed European aggregator of e-commerce businesses focused on buying Amazon brands and consolidating them into a portfolio.

**JURISDICTION AND VENUE**

14. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the Plaintiff and the Defendant, and the amount in controversy exceeds $75,000. Diversity of citizenship exists because Plaintiff is a citizen of Illinois, and Defendant is a citizen of Germany. This Court also has subject matter jurisdiction over this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

15. Personal jurisdiction over Defendant is proper because Defendant agreed to submit to the jurisdiction of this Court when it agreed that "any and all claims arising from [the agreement at issue], including its validity, interpretation, breach, violation, or termination, shall be brought in the exclusive forum of the state or federal courts located in New York County, New York and pursuant to New York law." Exhibit A at § 21(k). Defendant agreed further in the relevant Agreement that it "expressly consent[ed] to personal and subject matter jurisdiction [in the same forum]." *Id*.

16. Venue properly lies in this Judicial District pursuant to 28 U.S.C § 1391 because the parties consented in the agreement at-issue to the personal jurisdiction of appropriate courts located in New York County, New York and Defendant is not resident in the United States.

## GENERAL ALLEGATIONS

### The April 1, 2021 Asset Purchase Agreement

17. Plaintiff and Defendant entered into the Agreement effective as of April 1, 2021. *See* Exhibit A.

18. The Agreement contemplated an Earn-Out Payment, intended to act as a profit-sharing mechanism based on results during the Earn-Out Period (the one-year period following the Effective Date of the Agreement). The Earn-Out Payment was structured and defined in Section 4(c) of the Agreement as follows:

> Earn Out Payment: Earn-out consideration ("**Earn-Out Payment**") determined based on a profit-sharing arrangement between the Buyer and the Seller on EBITDA generated by the Assets (the "**EBITDA**") in the period of 12 months following the Effective Date (the "**Earn-Out Period**"). For the avoidance of doubt, the EBITDA shall be defined as earnings before interest, taxes, depreciation, and amortization associated with operating the Business, provided that the following general overhead expenses should be disregarded for the purpose of the earnings calculation: costs of accounting and legal advice, human resources, rent, maintenance, utilities and administration. The Earn-Out Payment will be paid within 8 weeks after the expiry of the Earn-Out Period. The Buyer will pay 40% of the EBITDA over US $1,112,676 earned in the Earn-Out Period.

19. The Agreement also contemplated a Deferred Payment, intended to be part of the consideration due for the Chalk City Assets. Under Section 4(b) of the Agreement, the Deferred Payment was defined and structured as follows:

> **Deferred Payment:** Deferred consideration equal to US $900,000 ("**Deferred Payment**"), which shall be paid no later than May 31, 2022 with exact amounts adjusted as follows:
>
> - The entire Deferred Payment if Net Sales for all chalk products and the Road Maker in the period between May 1, 2021 and April 30, 2022 ("**Trailing**

5

**Period**") increase, remain flat, or decrease by less than 5% compared to the Net Sales in the period of 12 months prior to the Trailing Period ("**Reference Period**");

- $90,000 less for every full percentage point of decrease of Net Sales between 5% to 15% compared to the Net Sales in the Reference Period until the amount decreases to $0;

- $0 if Net Sales in the Trailing Period decrease by 15% or more compared to the Net Sales in the Reference Period.

20. "Net Sales" for purposes of the Deferred Payment were defined elsewhere in Section 4(b) as "revenue (net of all discounts, returns and applicable sales and/or value-added taxes) accumulated from sellercentral and all non-Amazon sales."

21. Section 5 of the Agreement provided the mechanism by which the Earn-Out Payment and the Deferred Payment were to be calculated and communicated by Defendant following conclusion of the Trailing Period. It also addressed the possibility of any potential disputes regarding such calculations. Section 5 of the Agreement provided in pertinent part:

> **Deferred Payment Statement, Earn-Out Statement**. Within fourteen (14) days following the completion of the Trailing Period, Buyer shall provide Seller with a statement (the "**Deferred and Earn-Out Payment Statement**") that sets forth the Net Sales and EBITDA for the Trailing Period together with reasonable documentation supporting the information set forth in the Deferred and Earn-Out Payment Statement. After delivery of the Deferred and Earn-Out Payment Statement, Seller and its accountants shall be permitted to make inquiries of Buyer and its accountants regarding questions concerning, or disagreements with respect to, the Deferred and Earn-Out Payment Statement. If Seller has any objections to the Deferred and Earn-Out Payment Statement, then Seller shall deliver to Buyer a statement (a "**Payment Objection Statement**") setting forth its disputes or objections (the "**Payment Disputes**") to the Deferred and Earn-Out Payment Statement and, to the extent practical, Seller's proposed resolution of each such Payment Dispute. If a Payment Objection Statement is not delivered to Buyer within fourteen (14) days after delivery of the Deferred and Earn-Out Payment Statement, then the Deferred and Earn-Out Payment Statement as originally delivered by Buyer shall be final, binding and non-appealable by the parties. If a Payment Objection Statement is timely delivered, then Buyer and Seller shall negotiate in good faith to resolve any Payment Disputes […]

22. As is commonplace in asset purchase agreements that contemplate deferred compensation tied to performance metrics, and in recognition of the potential perverse incentives for buyers created by such provisions, the Agreement also included an elevated best-efforts provision. Unlike many asset purchase agreements that include "best efforts," "reasonable efforts," or "commercially reasonable efforts," the best-efforts provision negotiated for and included in the Agreement was intentionally drafted by the parties to be as stringent and seller friendly as possible. Specifically, Section 14(b) of the Agreement required Defendant to "make ***all possible good faith efforts*** to achieve income levels that [would] trigger the Deferred Payment." (Emphasis added.)

23. In addition, Section 14(b) of the Agreement established clearly defined and objective criteria to serve as a minimum floor for Defendant in pursuing "all possible good faith efforts" as required under that subsection. Section 14(b) of the Agreement provides:

> Buyer agrees it will make all possible good faith efforts to achieve income levels that will trigger the Deferred Payment. This ***includes but is not limited to*** maintaining sufficient inventories available for sale on Amazon; maintaining sufficient advertising to sustain market share; expanding into new markets; and not taking any bad faith action, the specific intention of which is to knowingly reduce the amount [of the Deferred Payment]. (Emphasis added.)

24. Section 14(b) of the Agreement provides further that "Seller's sole remedy for Buyer's breach of this section, will be complete payment of the full possible Deferred Payment [in the amount of US $900,000]."

25. Under Section 11(a) of the Agreement, "Buyer Default" is defined to include either Buyer's failure to timely complete the Deferred Payment or Buyer's breach of any term of the Agreement.

26. Under Section 11(b) of the Agreement, upon the occurrence of an event of Buyer Default, "Seller ***shall*** have the right to terminate the Agreement and ***shall*** be entitled to full possession of the Assets. Seller ***may*** make its election to terminate known to Buyer by delivery of

a notice of termination to Buyer." (Emphasis added). Upon such elective notice, "[s]uch termination shall be immediately effective and Seller shall be entitled to forthwith commence an action . . . to recover possession of the Assets." In either event, Buyer is required further to "fully comply and cooperate to transfer the Assets to Seller." Moreover, "[u]pon the occurrence of an event of Default, Buyer is not entitled to any refund of any portion of the Purchase Price."

27. Section 21(k) of the Agreement provides that "[t]he prevailing party is entitled to payment of its costs, expenses, and attorney fees by the non-prevailing party for actions, disputes, or litigation arising out of or related to this Agreement."

## SellerX Fails to Take Required Actions and Breaches its Best-Efforts Obligations During the Trailing Period

28. Following the Effective Date and during the one-year Trailing Period, Defendant failed to take the actions prescribed under the Agreement or utilize all possible good faith efforts to maintain and increase income levels, each in material breach of Section 14(b) of the Agreement.

29. Under the Agreement, Defendant was explicitly obligated to "maintain sufficient advertising to sustain market share" during the Trailing Period. Instead of maintaining advertising spending, and in direct contravention of the Agreement, Defendant significantly *reduced* advertising spend supporting the Chalk City products.

30. In the first quarter of 2022, for example, Defendant drastically reduced advertising support for Chalk City by 68% compared to the same period in 2021. As a direct and foreseeable consequence, Chalk City sales plummeted by 65% during this period, significantly deteriorating Chalk City's market share and impairing its future sales outlook.[2] The direct correlation between

---

[2] The deterioration of Chalk City's market share as a result of decreased advertising spend is due to the nature of sales on the Amazon.com marketplace, which rely both on organic search positioning and sponsored advertising to maintain sales momentum, which in turn impacts organic search.

Defendant's reduction in advertising and this corresponding decrease in sales is shown in the tables below:

| | Advertising | | |
|---|---|---|---|
| | 2021 | 2022 | Reduction In Direct Ad Exp |
| Jan | 18,887 | 6,430 | 66% |
| Feb | 23,641 | 7,056 | 70% |
| Mar | 72,978 | 23,978 | 67% |
| Total | 115,506 | 37,464 | 68% |

| | Sales | | |
|---|---|---|---|
| | 2021 | 2022 | Reduction In Sales |
| Jan | 152,592 | 46,384 | 70% |
| Feb | 150,865 | 61,366 | 59% |
| Mar | 736,794 | 259,901 | 65% |
| Total | 1,040,251 | 367,651 | 65% |

31. Under the Agreement, Defendant was also explicitly obligated to "maintain[] sufficient inventories [of Chalk City products] on Amazon" to meet domestic sales demand during the Trailing Period. Despite this obligation, Defendant regularly maintained low levels of inventory during the Trailing Period, and incredibly, allowed inventories to fall to zero on certain products, including during the crucial 2022 Easter season. In direct contravention of its obligation to use all possible good faith efforts to sell Chalk City products, in some instances, Defendant raised prices beyond competitive levels. Upon information and belief, Defendant raised prices to purposely slow sales, because Defendant did not have adequate inventory to meet demand and, upon information and belief, wanted to avoid showing zero inventory on those products so as not to be obviously in breach of the Agreement, as well as to avoid its obligations in connection with the Deferred Payment and the Earn-Out Payment.

32. As a direct and foreseeable consequence of Defendant's failure to maintain sufficient inventory, Defendant was unable to satisfy customer requirements during the Trailing Period, including most significantly, during the prime Easter season of March and April of 2022.

The Easter season historically represents the largest sidewalk chalk sales period of the year, and the parties deliberately timed the Trailing Period to encompass the 2022 Easter season for that specific reason. In light of the foregoing, allowing inventory levels for certain Chalk City products run down to zero on the Amazon.com marketplace during this period represents an egregious breach of Defendant's inventory obligations under the Agreement. *See* Exhibit A at § 14(b). [3]

33. Similarly, Defendant was required under the Agreement to "expand[] into new markets" during the Trailing Period. *Id*. Chalk City sales have traditionally been focused on North America and a material consideration for Regal in choosing SellerX—a German company with supposed expertise in Amazon sales in Europe—was the ability to receive consideration for sales made in Europe during the Trailing Period and the Earn-Out Period. During negotiations surrounding the Agreement, the parties came to a clear understanding that Defendant would expand sales to Europe specifically. Notwithstanding the parties' agreement and Defendant's corresponding clear contractual obligation enumerated in Section 14(b), Defendant failed to expand Chalk City into *any* new markets whatsoever during the Trailing Period, much less the European markets in which Defendant purportedly has expertise.

34. Upon information and belief, Defendant then deliberately waited until after the Trailing Period and Earn-Out Period concluded to begin selling Chalk City products in the European market. The Earn-Out Period ended on March 31, 2022 and the Trailing Period ended on April 30, 2022. Upon information and belief, Defendant first made Chalk City products available for purchase by European customers on May 14, 2022, with the first European sale taking place on May 25, 2022, in a blatant and egregious breach of its obligations under the Agreement.

---

[3] Notwithstanding Defendant's obligation to "maintain[] sufficient inventories [of Chalk City products] on Amazon," *see* Exhibit A at § 14(b), Defendant's position is that "Section 14(b) does not impose any duty on SellerX to maintain any specific inventory levels of any specific products at any specific time." *See* Exhibit D.

35. Similarly, at Regal's suggestion, Defendant introduced a new 165 count chalk product listing, which Regal believed would be well-suited for the international market and was ready to ship in September 2021. Inexplicably, SellerX did not start selling the item until April 29, 2022, approximately seven months later and a day prior to the close of the Trailing Period.

### SellerX Fails to Pay any Earn-Out or Deferred Payment and Refuses to Engage with Plaintiff in Good Faith

36. On May 13, 2022, Defendant provided a purported Deferred and Earn-Out Payment Statement pursuant to Section 5 of the Agreement. Under Section 5, such statement was required to set forth the "Net Sales and EBITDA for the Trailing Period together with reasonable documentation supporting the information set forth in the Deferred and Earn-Out Payment Statement." Instead, and in flagrant breach of the Agreement, Defendant merely provided unsupported summary figures without reference to any further data or documentation supporting such calculations. A copy of this deficient Deferred and Earn-Out Payment Statement is appended hereto as "Exhibit B." Regal initially informed SellerX that the Deferred and Earn Out Statement was deficient and lacking the necessary supporting documentation on May 17, 2022.

37. On May 26, 2022, Plaintiff provided a Payment Objection Statement in accordance with Section 5 of the Agreement. A copy of Plaintiff's Payment Objection Statement is appended hereto as "Exhibit C." Plaintiff's Payment Objection Statement noted the lack of supporting documentation sufficient to calculate the figures provided in Defendant's purported Deferred and Earn-Out Payment Statement. Exercising its right to make inquiry regarding such figures, Plaintiff requested documentation sufficient to ascertain and meaningfully evaluate the figures provided by Defendant.

38. That same day, Noora Haapaniemi, Co-Head of M&A and Corporate Legal at SellerX sent Plaintiff a spreadsheet purporting to provide supporting material to the deficient

11

Deferred and Earn-Out Statement sent on May 13, 2022. That spreadsheet failed to respond to the inquiries set forth in Plaintiff's May 26 Objection Letter and remained deficient under the requirements set forth in the Agreement.

39. Then, on June 13, 2022, outside litigation counsel for Defendant provided a letter to Plaintiff appended hereto as "Exhibit D" (the "June 13 letter"). That letter fails to provide any meaningful response to the inquiries Plaintiff made on May 26, 2022 seeking to understand exactly how Defendant attempted to meet its contractual obligations. *See* Exhibits C, D.

40. Rather than provide the requested information, Defendant, via outside counsel, claimed that "SellerX was not required, in the face of strong headwinds entirely out of its control to continue to spend advertising dollars to try to prop up the market share of any product whose market share was eroding, or of Chalk City as a whole." Exhibit D at 3. To the contrary, as Defendant admits, SellerX was required to make **all possible** *good faith efforts* to achieve income levels that will trigger the Deferred Payment, including "maintaining sufficient advertising to *sustain* market share." Exhibit A at § 14(b). The Agreement does not excuse Defendant's contractual obligations due to changing market conditions and Defendant admits that it made no attempt to maintain market share. *See* Exhibit D at 3-4.

41. In the June 13 letter, Defendant admits that it allowed inventories of Chalk City brand products to run to zero during the 2022 Easter season in clear violation of its obligation to maintain "sufficient inventories" under the Agreement. *See* Exhibit D at 4. Defendant also admits that it failed to expand into new markets as required by the Agreement, claiming that the "Agreement includes no express deadline for SellerX to complete any sales in Europe." *Id*. at 4-5. To the contrary, the Defendant was required to make "all possible good faith efforts to achieve income levels that will trigger the Deferred Payment" during the Trailing Period, and admittedly

12

has failed to do so. *See* Exhibit A at § 14(b). SellerX also admits that it breached the Agreement by reducing "its advertising spending such that market share is affirmatively reduced." Exhibit D at 3.

42. On June 22, 2022, Regal's counsel provided Defendant with a detailed letter debunking the various claims and excuses asserted in the June 13 letter, a copy of which is appended hereto as "Exhibit E." To date, Defendant has not refuted any of Regal's positions or factual allegations, despite repeated invitations to do so. The June 22 letter also provided Defendant with written notice of default, reiterated notice of breach, and demanded payment and return of the Assets. *See* Exhibit E.

### SellerX Fails to Tender the Deferred Payment or Transfer Assets

43. In light of Defendant's pretextual and counterfactual positions asserted in the June 13 letter, Plaintiff provided Defendant with a notice of breach of its obligations to make the Deferred Payment on June 13, 2022.

44. Defendant failed to cure its breach within the five-day cure period specified by Section 11(c) of the Agreement, which in turn constituted a Buyer's Default pursuant to Section 11(a) of the Agreement.

45. The Agreement provides that, "[u]pon the occurrence of an event of Default, Seller ***shall*** have the right to terminate the Agreement and ***shall*** be entitled to full possession of the Assets." *See* Exhibit A at § 11(b). Crucially, Plaintiff has the right, but not the obligation to terminate the Agreement following Defendant's Default, without affecting Plaintiff's entitlement to possession of the Chalk City Assets, which right automatically and irrevocably accrues, pursuant to the Agreement. *Id*.

46. As of the filing of this Complaint, Defendant has failed to remit the full Deferred Payment as required under Section 14 of the Agreement.

47. As of the filing of this Complaint, Defendant has failed to transfer the Chalk City Assets to Plaintiff as required under Section 11 of the Agreement.

## COUNT ONE

### *Declaratory Judgment*

48. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

49. Defendant SellerX agreed under Section 14 of the Agreement, that if Defendant failed to take the specific actions required of it under the Agreement, Plaintiff would be entitled to payment of the full possible Deferred Payment in the amount of $900,000. *See* Exhibit A at § 14(b).

50. Defendant also agreed that failure to timely complete the Deferred Payment or a breach of the Agreement would constitute Buyer's Default. *See* Exhibit A at § 11(a).

51. Defendant further agreed that, "Upon the occurrence of an event of Default. Seller shall have the right to terminate the Agreement and shall be entitled to full possession of the Assets." *See* Exhibit A at § 11(b).

52. Plaintiff agreed to a non-compete provision restricting Plaintiff from engaging or assisting others in "engaging in any activity in competition with the Business (i.e., sale of sidewalk chalk)" or having a "direct interest in any Person that engages in competition with the Business." *See* Exhibit A at § 18.

53. Plaintiff has fully performed all of its obligations under the Agreement.

54. This action represents a justiciable controversy, as to which a declaration of the rights and other legal obligations of the parties is appropriate under 28 U.S.C. §§ 2201, 2202 (the "Declaratory Judgment Act").

55. Defendant's failure to comply with and disavowal of its contractual obligations amount to a Buyer's Default.

56. Upon information and belief, Defendant believes that termination of the Agreement is required as a precondition to Plaintiff's recovery of the Assets, and is relying on that position to justify its failure to return the Assets to Plaintiff.

57. Plaintiff has suffered harm and will suffer harm as a result of the uncertainty created by Defendant's disavowal as to its unambiguous obligations under the Agreement, including without limitation, that (i) Chalk City will suffer from further neglect while its ownership is undetermined, and because (ii) Plaintiff does not know whether it remains bound by the non-compete provision set forth in the Agreement.

58. A declaratory judgment is necessary and appropriate at this time to establish that:

   A. Defendant breached its obligations under Section 14 of the Agreement and Plaintiff is therefore entitled to payment of the full possible Deferred Payment by Defendant in the amount of $900,000;

   B. The occurrence of an event of Default has taken place due to (i) Defendant's breach of Section 14(b) of the Agreement and (ii) Defendant's failure to timely complete the Deferred Payment;

   C. Plaintiff is entitled to full possession of Chalk City, whether or not it chooses to terminate the Agreement under Section 11 of the Agreement;

   D. Plaintiff's termination of the Agreement will not affect its entitlement to payment of the full possible Deferred Payment and the Earn-Out Payment it should have received but for Defendant's breach of the Agreement;

    E.    Due to the occurrence of an event of Default, Defendant is not entitled to any refund of any portion of the Purchase Price; and

    F.    Plaintiff's termination of the Agreement will render the non-compete provision set forth in Section 18 of the Agreement void and/or unenforceable.

## COUNT TWO

### *Breach of Contract*

59. Plaintiff repeats and realleges the preceding allegations as if set forth fully herein.

60. The Agreement by and between Plaintiff and Defendant is a valid, binding contract.

61. Plaintiff has performed each of its obligations under the Agreement.

62. Defendant has breached its obligations under the Agreement.

63. Defendant's breaches of the Agreement include, without limitation:

    A. its failure to make all possible good faith efforts during the Trailing Period to achieve income levels that would trigger the Deferred Payment as required under Section 14(b) of the Agreement;

    B. its failure during the Trailing Period to maintain sufficient inventories for sale of Chalk City products on the Amazon.com marketplace as required under Section 14(b) of the Agreement;

    C. its failure during the Trailing Period to maintain sufficient advertising to sustain Chalk City products' market share as required under Section 14(b) of the Agreement;

    D. its failure during the Trailing Period to expand sales of Chalk City products into new markets as required under Section 14(b) of the Agreement;

    E. its failure to provide a Deferred and Earn-Out Payment Statement supported by reasonable documentation as required under Section 5 of the Agreement;

    F. its failure to respond in good faith to Plaintiff's inquiries regarding the Deferred and Earn-Out Payment Statement, as required by Section 5 of the Agreement;

    G. its failure to remit payment of the full Deferred Payment in the amount of $900,000 as required by Sections 4(a) and 14(b) of the Agreement; and

    H. its failure to transfer the Chalk City Assets to Plaintiff as required by Section 11 of the Agreement.

64. Plaintiff is entitled to specific performance of the transfer of the Chalk City Assets by Defendant under Section 17 of the Agreement and at common law.

65. Plaintiff is entitled to specific performance of the payment of the full possible Deferred Payment in the amount of $900,000 by Defendant.

66. Plaintiff is ready, willing, and able to perform its obligations under the Agreement and has fulfilled all of its obligations to date.

67. It is within Defendant's power to transfer the Chalk City Assets to Plaintiff.

68. Plaintiff has no adequate remedy at law to compel the transfer of the Chalk City Assets.

69. As a consequence of Defendant's breaches, Plaintiff has been damaged in an amount to be determined at trial and exceeding $75,000. Plaintiff's damages include, at minimum:

    A. The full amount of the Deferred Payment ($900,000);

    B. The Chalk City Assets, which Defendant has failed to transfer to Plaintiff under Section 11 of the Agreement;

C.  Its costs and attorney's fees, pursuant to Section 21(k) of the Agreement;

D.  The value of the Earn-Out Payment which Plaintiff would have received but for Defendant's breach of its obligation to use all possible good faith efforts in the management of the Chalk City Assets during the relevant time period; and

E.  Because Plaintiff's claims arise out of New York state law, statutory pre-judgment and post-judgment interest on the value of the Deferred Payment and the value of the Assets, until transferred or remitted, as applicable, pursuant to CPLR § 5004.

## COUNT THREE

### *Breach of the Covenant of Good Faith and Fair Dealing*

70. Plaintiff repeats and realleges the preceding allegations as if set forth fully herein.

71. The Agreement is a valid and enforceable contract.

72. There is, in each agreement, an implied covenant of good faith and fair dealing. Defendant had a duty to act in good faith toward Plaintiff to, among other things, to make all possible good faith efforts to achieve income levels that would trigger the Deferred Payment and Earn-Out Payment and to honor its obligation to pay Plaintiff what it is owed under the Agreement.

73. Defendant has breached the implied covenant of good faith and fair dealing inherent in the Agreement by, among other things, not honoring its obligation to pay Plaintiff or make all possible good faith efforts to achieve income levels that would trigger the Deferred Payment and Earn-Out Payment.

74. Defendant has acted in bad faith and with bad motive and intention to deprive Plaintiff of the benefit of the bargain of the Agreement by willfully failing to perform its obligations under the Agreement and by not paying Plaintiff what it is owed.

75. Such breach by Defendant has proximately caused damage to Plaintiff as set forth above.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant as follows:

A. An order declaring that:

  i. Plaintiff is entitled to payment of the full possible Deferred Payment by Defendant in the amount of $900,000 due to Defendant's breach;

  ii. The occurrence of an event of Default has taken place due to Defendant's breach of Section 14(b) of the Agreement and Defendant's failure to timely complete the Deferred Payment;

  iii. Due to the occurrence of an event of Default, Defendant is not entitled to any refund of any portion of the Purchase Price;

  iv. Plaintiff is entitled to full possession of Chalk City;

  v. Plaintiff's termination of the Agreement will not affect its entitlement to payment of the full possible Deferred Payment and the Earn-Out Payment it should have received but for Defendant's breach of the Agreement; and

  vi. Plaintiff's termination of the Agreement will render the non-compete provision set forth in Section 18 of the Agreement void and/or unenforceable.

B. An order requiring specific performance by Defendant of Section 11 of the Agreement and the transfer of the Chalk City Assets to Plaintiff;

C. An award of compensatory damages in an amount to be determined at trial;

  D. An award of Plaintiff's costs and attorney's fees;

  E. An award of statutory pre-judgment and post-judgment interest on the value of the Deferred Payment and the value of the Assets, until transferred or remitted, as applicable, pursuant to CPLR § 5004; and

  F. Any such other and further relief that the Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial for all issues triable by jury, including but not limited to those issues and claims set forth in any amended complaint or consolidated action.

Dated: New York, New York
    August 31, 2022

Respectfully Submitted,

**MESSING, P.C.**

By: /s/ *Alessandra Carcaterra Messing*

ALESSANDRA CARCATERRA MESSING
alessandra@messing.law
Tel. (646) 801-3005
AARON I. MESSING
aaron@messing.law
Tel. (646) 450-9460
31 Howard Street, 2nd Floor
New York, NY 10013
*Counsel for Plaintiff Regal Games, LLC*