UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

REGAL GAMES, LLC,

                        Plaintiff,

- vs -

SELLERX EIGHT GmbH d/b/a
SELLERX,

                        Defendant.

Civil Action No. 1:22-cv-7455-ER

Hon. Edgardo Ramos

## DECLARATION OF ANKIT VORA

1. I am a citizen of India and a resident of the United Kingdom.

2. I am currently employed as a Director – Brand Management at MXP Prime Platform Limited d/b/a SellerX Eight GmbH ("SellerX"), the Defendant in this action. I have held this position since October 2022.

3. When SellerX acquired the Chalk City business ("Chalk City") from Plaintiff Regal Games, LLC ("Plaintiff"), in 2021, I was working as a Senior Brand Manager at SellerX Germany GmbH d/b/a SellerX Eight GmbH (also referred to herein as "SellerX," and forming part of the SellerX group of companies).

4. SellerX and Plaintiff entered into an Asset Purchase Agreement (the "APA") on April 1, 2021. SellerX purchased substantially all of the assets of Plaintiff's "Chalk City" product line.

5. The purchase price included an "Upfront Payment" from SellerX to Plaintiff of $3,950,000 and an "Inventory Payment" from SellerX to Plaintiff of $361,626. SellerX made both of these payments, for a total of $4,311,626.

1

6. As of the APA's Effective Date, and for several months thereafter, Chalk City products were still being sold through Plaintiff's Amazon account. Despite having purchased substantially all of Chalk City's assets, we at SellerX did not have the authority to log into Plaintiff's Amazon account. Among other things, we lacked the ability to make changes to the prices or descriptions of any Chalk City products. We were therefore dependent on Plaintiff's cooperation in managing Chalk City's day-to-day operations.

7. During SellerX's first year of owning and managing Chalk City, the market for sidewalk chalk experienced at least two major disruptions, both of which severely impacted Chalk City's net sales and EBITDA. First, Chalk City's major competitor in the sidewalk chalk sector, a company called Joyin Toy, slashed its prices by as much as 33% to gain market share. That disruption alone would have made it difficult, if not impossible, for Chalk City to meet the sales and EBITDA thresholds in the APA.

8. A second and more significant disruption was Amazon Retail's significant increase in inventory position in sidewalk chalk through its Vendor Program. From time to time, Amazon Retail buys inventory from third party sellers/brands through its Vendor Program. In the summer of 2021, Amazon Retail acquired a substantial inventory position in sidewalk chalk products, and leveraged its size to significantly slash prices to $2.97 per unit. This resulted in significantly higher price competition for the best-selling Chalk City product, which Chalk City could not possibly match.

9. For example, Chalk City's best-selling product at that time sold for $9.99 per unit, of which Chalk City paid Amazon fees and commissions of $5.90. Amazon Retail's sale of a competing product for $2.97 per unit made it virtually impossible for Chalk City to compete.

10. In addition, COVID-19 restrictions began to let up in 2021 and into 2022, which further negatively impacted Chalk City's sales.

11. Although SellerX made every possible good faith effort to remain competitive and retain market share during the "Trailing Period" and "Earn-Out Period" set forth in the APA, Joyin Toy and Amazon Retail were offering similar products at such low prices that Chalk City could not match them without operating at loss. Chalk City did, in fact, recognize losses in each month starting from July 2021 to January 2022.

12. As a result of this previously unforeseen competition, Chalk City's net sales and EBITDA for the Trailing Period and Earn-Out Period, respectively, were nowhere near the thresholds at which Plaintiff would become entitled to any portion of the Deferred Payment or Earn-Out Payment. To the contrary, Chalk City's net sales during the Trailing Period were $2,664,290, down from $4,053,341 in the prior twelve months. Chalk City's EBITDA was even worse; it shrunk by over 90% during the Earn-Out Period.

13. In accordance with paragraph 5 of the APA, SellerX reported Chalk City's disappointing earnings to Plaintiff in a Deferred and Earn-Out Payment Statement dated May 13, 2022. The Deferred and Earn-Out Payment Statement is attached as Exhibit B to Plaintiff's First Amended Complaint ("F.A.C.").

14. The Deferred and Earn-Out Payment Statement provides information concerning Chalk City's net sales and EBITDA and informs Plaintiff that it is not entitled to any portion of the Deferred or Earn-Out Payments. (*See* F.A.C., Ex. B.)

15. To be clear, SellerX did not make any Deferred Payment or Earn-Out Payment to Plaintiff at the end of the relevant periods because Chalk City's net sales and EBITDA during the relevant periods were so low that they did not trigger the thresholds set forth in the APA.

16. Plaintiff initially also complied with Paragraph 5 of the Agreement. On May 26, 2022, Plaintiff's Managing Member, Michael Roberts, emailed SellerX's legal team a "Payment Objection Statement" to SellerX's Legal Team. That Payment Objection Statement is attached to the F.A.C. as Exhibit C.

17. Mr. Roberts demanded that SellerX provide documentation supporting the data in its Deferred and Earn-Out Payment Statement. (F.A.C., Ex. C.) Invoking Paragraph 5, Mr. Roberts wrote that, "As you know, [Plaintiff] is permitted to make inquiries of SellerX regarding the Deferred and Earn-Out Payment Statement and SellerX is required to answer them. As set forth in detail below, we need the following documentation to be able to meaningfully evaluate SellerX's Statement for Deferred and Earn-Out Payment." (*Id.* at 1.) That demand is followed by a list of fifteen different categories and several dozen subcategories of documentation. (*Id.* at 1-3.)

18. The parties continued discussing Chalk City's performance for several months, including through counsel. Even well into 2022, SellerX did not have access to the revenue that had accrued in Plaintiff's Amazon account through the sale of assets that belonged to us, which the Agreement refers to as "Residual Amazon Revenue." We were therefore dependent on Plaintiff to prepare an "Adjustment Statement" that accurately reported the Residual Amazon Revenue to which SellerX was entitled pursuant to the reconciliation process set forth in paragraph 9 of the Agreement.

19. In a spreadsheet attached to an email dated August 17, 2022, Plaintiff's counsel purported to provide us with certain "reconciliation data" concerning "transition sales"—*i.e.*, Residual Amazon Revenue and wholesale sales. A true and correct copy of Plaintiff's counsel's spreadsheet is attached hereto as Exhibit A.

20. According to Plaintiff's counsel's spreadsheet, the net amount due to SellerX from transition sales, less expenses paid by Plaintiff, is $335,532. (*See* Ex. A at Row 80.) As of today, Plaintiff has not yet paid SellerX any of the transition sales funds to which SellerX is entitled.

21. At some point, Plaintiff stopped communicating with SellerX and eventually caused its initial Complaint to be served on SellerX in Germany on January 24, 2023.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 29, 2023

_____
Ankit Vora

## CERTIFICATE OF SERVICE

I hereby certify that on March 29, 2023, I caused the foregoing document to be served, via CM/ECF, to all counsel of record in this action.

Dated: New York, New York
       March 29, 2023

Respectfully submitted,

BROWN LAW GROUP, PLLC

By: _____
Daniel J. Brown, Esq.
Judd R. Spray, Esq. (Of Counsel)
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Tel: (212) 485-9805
Dan@BrownLawGroupLLC.com
*Attorneys for Defendant SellerX Eight GMbH*