**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **REGAL GAMES, LLC,**<br><br>                              **Plaintiff,**<br><br>         – vs –<br><br>**SELLERX EIGHT GmbH d/b/a**<br>**SELLERX,**<br><br>                              **Defendant.** | **Civil Action No. 1:22-cv-7455-ER**<br><br>Hon. Edgardo Ramos |

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO STAY THIS ACTION IN FAVOR OF ARBITRATION**
**OR, IN THE ALTERNATIVE, TO DISMISS CERTAIN CLAIMS**

Daniel J. Brown, Esq.
Judd R. Spray, Esq. (Of Counsel)
**BROWN LAW GROUP, PLLC**
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Tel: (212) 485-9805
Dan@BrownLawGroupLLC.com
*Attorneys for Defendant SellerX*
   *Eight GMbH*

April 26, 2023

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.   The Court Should Stay This Action Until Any Payment Disputes and/or Adjustment
     Disputes Have Been Conclusively Resolved in Final and Binding Arbitration ...................... 2

     A.  The Parties Agreed To Arbitrate Payment and Adjustment Disputes ................................ 2

     B.  Plaintiff Cannot Hold the Right To Compel Arbitration
         in its Back Pocket While this Action Goes Forward ........................................................... 4

     C.  Plaintiff Cannot Deny SellerX the Mechanism—*i.e.*, Arbitration—Pursuant
         to Which Its Entitlement to Residual Amazon Revenue Is To Be Decided ....................... 4

II.  Plaintiff Has Failed To Demonstrate That Its Implied
     Covenant of Good Faith and Fair Dealing Claim Is Different
     in Any Meaningful Respect from Its Breach of Contract Claim ................................................ 6

III. Plaintiff Is Bound by the Limitation of Liability Provision in the APA .................................... 8

CONCLUSION .................................................................................................................... 10

**TABLE OF AUTHORITIES**

## Cases

**Page(s)**

*Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*,
    894 N.Y.S.2d 47 (1st Dep't 2010) ......................................................................7

*Ari & Co. v. Regent Int'l Corp.*,
    273 F. Supp. 2d 518 (S.D.N.Y. 2003) ...............................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .......................................................................................6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 570 (2007) ...............................................................................6, 7

*Greenwich Capital Fin. Products, Inc. v Negrin*,
    74 AD3d 413 (1st Dep't 2010) ..........................................................................5

*GSI Commerce Sols., Inc. v BabyCenter, L.L.C.*,
    618 F.3d 204 (2d Cir 2010) ...............................................................................3

*Hadami, S.A. v. Xerox Corp.*,
    272 F Supp 3d 587 (S.D.N.Y. 2017) .................................................................7

*In re Currency Conversion Fee Antitrust Litig.*,
    265 F. Supp. 2d 385 (S.D.N.Y. 2003) ...............................................................4

*Mariah Re Ltd. v. American Family Mutual Ins. Co.*,
    52 F. Supp. 3d 601 (S.D.N.Y. 2014) .................................................................6

*Morgan Stanley & Co. v. Peak Ridge Master SPC LTD*,
    930 F. Supp. 2d 532 (S.D.N.Y. 2013) ...............................................................9

*Nakahata v New York-Presbyt. Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013) ..............................................................................7

*Paneccasio v. Unisource Worldwide, Inc.*,
    532 F.3d 101 (2d Cir. 2008) ...........................................................................3, 9

*Process Am., Inc. v. Cynergy Holdings, LLC*,
    839 F.3d 125, 138 (2d Cir. 2016) ......................................................................9

*Ray Beyond Corp. v. Trimaran Fund Mgmt., L.L.C.*,
    No. 2018-0497-KSJM, 2019 Del. Ch. LEXIS 36 (Del. Ch. Jan. 29, 2019) .......3

*United States v. Yonkers Bd. of Educ.*,
    611 F Supp 730 (S.D.N.Y. 1985) ................................................................5

*W.W.W. Associates, Inc. v. Giancontieri*,
    77 N.Y.2d 157 (1990) ................................................................3

## <u>Statutes, Treaties, and Rules</u>

Federal Rule of Civil Procedure 12(b)(6) ................................................................7, 9

## **PRELIMINARY STATEMENT**

Plaintiff acknowledges that e-commerce sales slowed almost immediately after SellerX acquired Chalk City from Plaintiff.  In Plaintiff's words, "[t]ime passed, society combated the pandemic, and . . . social distancing tapered off."  That decline in sales is one of many reasons that Plaintiff's claims are destined to fail, as SellerX will ultimately prove that it made all possible good faith efforts to maintain Chalk City's profitability in the face of market developments beyond its control.

Before this action can proceed, however, SellerX is entitled to have any disputes concerning net sales, EBITDA, or Residual Amazon Revenue—issues at the heart of this case—resolved in arbitration.  Although Plaintiff denies having any "intention" to arbitrate disputes, Paragraphs 5 and 9 of the APA indisputably constitute agreements to arbitrate as a matter of New York law.  Plaintiff cannot now deny SellerX the right to present these issues to an arbitrator with the authority to issue final and binding determinations.

If the Court declines to compel arbitration, then the Court should dismiss Plaintiff's claim for breach of the implied covenant of good faith and fair dealing.  Plaintiff has utterly failed to distinguish that claim from its breach of contract claim.  The Court should also dismiss Plaintiff's demand for return of the Chalk City business, as that proposed remedy would provide Plaintiff with a windfall and is explicitly precluded by the APA provision stating that the "sole remedy" for SellerX's alleged breaches of the APA is to make a Deferred Payment to Plaintiff.

SellerX in no way seeks to deny Plaintiff its "constitutional civil right" to have its claims decided in Court, as Plaintiff asserts.  SellerX seeks only to enforce its contractual rights. Plaintiff, having freely entered into the APA, should be held to its agreement, including with regard to the APA's agreements to arbitrate and its sole remedy provision.

## ARGUMENT

**I.   The Court Should Stay This Action Until Any Payment Disputes and/or Adjustment Disputes Have Been Conclusively Resolved in Final and Binding Arbitration.**

SellerX has demonstrated that the APA contains two agreements to arbitrate.  (*See* SellerX's Memorandum of Law ("SellerX's M.O.L.") at 12-15.)  Specifically, Paragraph 5 of the APA constitutes an agreement to arbitrate "Payment Disputes" concerning Chalk City's net sales and EBITDA, and Paragraph 9 constitutes an agreement to arbitrate "Adjustment Disputes" concerning the Residual Amazon Revenue ("RAR") that continued to accumulate in Plaintiff's Amazon account after execution of the APA.[1]  If there were no Payment Disputes or Adjustment Disputes, as Plaintiff contends, then there would be no need to arbitrate.  Unfazed, Plaintiff has taken positions that unequivocally trigger mandatory arbitration.

First, Plaintiff claims to be entitled to raise Payment Disputes at some future date, at Plaintiff's unilateral discretion, which would render the APA's arbitration provision meaningless.  Second, Plaintiff claims it is entitled to hold onto its accumulated RAR indefinitely, again based on its say-so alone, which is contrary to black-letter New York law requiring contract performance (i) within a reasonable time period, and (ii) avoiding contract interpretations that would produce commercially unreasonable results like that urged by Plaintiff.

### A.   The Parties Agreed To Arbitrate Payment and Adjustment Disputes.

In its opening brief, SellerX cited numerous judicial opinions holding that, where parties have agreed to submit certain disputes to a neutral, third-party arbitrator for final and binding resolution, they have agreed to arbitrate those disputes.  (SellerX's M.O.L. at 12-15.)  No "magic

---

[1] The APA broadly defines "Payment Disputes" to include *any* disputes or objections that Plaintiff might have to SellerX's statement of Chalk City's net sales and EBITDA. "Adjustment Disputes" include any disputes or objections that SellerX might have to Plaintiff's statement of RAR.

words" are required to create an agreement to arbitrate.  (*Id.*)  In response, Plaintiff tries to wish

away SellerX's authorities by ignoring them entirely.  Remarkably, Plaintiff does not address

*any* of SellerX's authorities on this issue, let alone attempt to distinguish them.[2]

Plaintiff instead concludes, based on the self-serving declaration of a fact witness,

Michael Roberts, and the APA's choice-of-law provision, that the parties lacked the intention to

arbitrate potential disputes when they entered into the APA.  (Plaintiff's M.O.L. at 7-9.)  Plaintiff

thus not only ignores SellerX's authorities, but also takes a position that violates black-letter

rules of contract interpretation.  The Court should disregard Mr. Roberts' subjective

interpretation of the APA, which contradicts the plain language of Paragraphs 5 and 9.  *See*, *e.g.*,

*W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("Evidence outside the four

corners of the document as to what was really intended but unstated or misstated is generally

inadmissible to add to or vary the writing.").  The Court should similarly reject Plaintiff's

attempt to negate the agreements to arbitrate in light of the APA's choice-of-law provision,

which violates the principles that every provision of a contract should be given meaning and that

specific contract language prevails over general language.  *See*, *e.g.*, *GSI Commerce Sols., Inc. v*

*BabyCenter, L.L.C.*, 618 F3d 204, 214 (2d Cir 2010) (quoting *Paneccasio v. Unisource*

*Worldwide, Inc.,* 532 F.3d 101, 111 (2d Cir. 2008)).  The APA must be enforced according to its

terms, and Paragraphs 5 and 9 clearly constitute agreements to arbitrate Payment and Adjustment

Disputes as a matter of New York law.[3]

---

[2] One of the few authorities that Plaintiff cites is *Ray Beyond Corp. v. Trimaran Fund Mgmt., L.L.C.*, No. 2018-0497-KSJM, 2019 Del. Ch. LEXIS 36 (Del. Ch. Jan. 29, 2019), a decision of Delaware's Court of Chancery, decided under Delaware law, with no relevance to this action.

[3] Plaintiff also focuses much of its attention on a strawman argument, denying that the parties agreed to arbitrate any and all legal claims.  (Plaintiff's M.O.L. at 7-9.)  It is not SellerX's contention, however, that the parties agreed to arbitrate any and all legal claims.  SellerX seeks

**B. Plaintiff Cannot Hold the Right To Compel Arbitration
in its Back Pocket While this Action Goes Forward.**

If Plaintiff disagrees with SellerX's calculations of net sales and EBITDA, then it is required to take its Payment Disputes to an arbitrator, who will determine the appropriate procedures for resolving them.  Or Plaintiff can stipulate to SellerX's calculations.  SellerX presented these options to Plaintiff in its opening brief, (SellerX M.O.L. at 4, 18), but Plaintiff refuses to choose either.

Plaintiff has therefore confirmed that this action should be stayed, as Plaintiff should not be allowed to force SellerX to participate in this action, in which Chalk City's net sales and EBITDA are central issues, while claiming the right to arbitrate Payment Disputes at some future time.  That would violate the Federal Arbitration Act's liberal policy in favor of arbitration as well as the FAA's mandate that the Court *must* stay any suit or proceeding until arbitration has been completed if the action concerns "any issue referable to arbitration" under a written agreement for such arbitration.  *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp. 2d 385, 400 (S.D.N.Y. 2003) (citing the FAA and cases).

**C. Plaintiff Cannot Deny SellerX the Mechanism—Arbitration—Pursuant
to Which Its Entitlement to Residual Amazon Revenue Is To Be Decided.**

Plaintiff has taken the position that its calculation of the RAR it owes SellerX is "final, binding, and non-appealable," but that Plaintiff is nevertheless entitled to hold onto the RAR indefinitely.  (Plaintiff's M.O.L. at 5-6.)  Assuming *arguendo* that Plaintiff's calculation of RAR is final, binding, and non-appealable, then Plaintiff's ongoing refusal to turn those funds over to SellerX still constitutes a ripe Adjustment Dispute governed by the arbitration provision set forth

---

only to enforce its contractual right to have Payment and Adjustment Disputes, specifically, decided in binding arbitration before this lawsuit moves forward.

in the APA.  Specifically, the APA calls for SellerX to make an "Inventory Payment" to Plaintiff, which it did.  (F.A.C., Ex. A ⁋ 4(d); *see also* Vorat Dec. (CM/ECF # 18) ⁋ 5.)  The APA further states that, "[t]he Inventory Payment is subject to the reconciliation provisions of this Agreement below."  (F.A.C., Ex. A ⁋ 4(d).)  Those reconciliation provisions are set forth in paragraph 9, the explicit purpose of which is to obligate Plaintiff to provide SellerX with information concerning the RAR to which it is entitled and the opportunity to question that information.  Plaintiff is thus incorrect that its obligation to then remit the RAR to SellerX is only "implied."  (Plaintiff's M.O.L. at 5-6.)  To the contrary, the parties agreed that the Inventory Payment would be subject to the reconciliation provisions of paragraph 9; SellerX made the Inventory Payment as agreed; Plaintiff calculated the RAR; and Plaintiff is now in breach of the APA by virtue of its ongoing refusal to make a reconciliation payment to SellerX.[4]

SellerX is entitled, under Paragraph 9 of the APA, to have an arbitrator to issue a final, binding, and non-appealable order stating the amount of RAR due to SellerX.  SellerX is further entitled to enforce that final, binding, and non-appealable order by any legal means.  Under no reasonable interpretation of the APA does Plaintiff have the right to deny SellerX the mechanism by which its entitlement to RAR is to be decided—*i.e.*, arbitration—while also withholding those

---

[4] Plaintiff tries to justify its refusal to pay, in part, by noting that the APA does not set a specific deadline for Plaintiff to make the reconciliation payment.  (M.O.L. at 5.)  In *United States v. Yonkers Bd. of Educ.*, 611 F Supp. 730 (S.D.N.Y. 1985), this Court held: "The mere omission of an explicit deadline for performance does not give rise to an inference that the parties contemplated delay in, or conditions precedent to, performance.  Where no deadline is specified, it is assumed that the parties intended performance within a reasonable time."  *Id.* at 735.  Likewise, Plaintiff's contention that it can withhold the reconciliation payment indefinitely violates the principle that contracts "should not be interpreted to produce a result that is absurd, commercially unreasonable or contrary to the reasonable expectations of the parties."  *Greenwich Capital Fin. Products, Inc. v Negrin*, 74 AD.3d 413, 415 (1st Dep't 2010).

funds from SellerX indefinitely, or even "until its claims are resolved[.]"  (Plaintiff's M.O.L. at 6.)

**II.     Plaintiff Has Failed To Demonstrate That Its Implied**
**Covenant of Good Faith and Fair Dealing Claim Is Different**
**in Any Meaningful Respect from Its Breach of Contract Claim.**

The law in New York is clear: "New York . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Ari & Co. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (citing cases).  New York law is similarly clear that the implied covenant of good faith and fair dealing "does not create obligations that go beyond those intended and stated in the language of the contract."  *Mariah Re Ltd. v. American Family Mutual Ins. Co.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014).  Further, "where the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is intrinsically tied to the damages allegedly resulting from the breach of the contract there is no separate and distinct wrong that would give rise to an independent claim."  *Id.*  Therefore, Plaintiff's purported claim for breach of the implied covenant of good faith and fair dealing should be dismissed now, at the pleading stage, pursuant to these well-settled principles of New York law.  (SellerX M.O.L. at 19-21.)

In response, Plaintiff ignores these principles of New York law entirely.  Plaintiff cites no authority, because there is none, holding that a duplicative claim for breach of the implied covenant of good faith and fair dealing should survive a motion to dismiss.  Instead, Plaintiff makes the patently incorrect argument that its purported claim should be assessed solely under the pleading standard set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  (Plaintiff's M.O.L. at 14-15.)  The flaw in Plaintiff's argument is obvious: *Iqbal* and *Twombly* set forth the minimum pleading

requirements necessary to satisfy Federal Rule of Civil Procedure 8; they in no way indicate, however, that any claim meeting those minimum pleading requirements is immune from a motion to dismiss pursuant to Rule 12(b)(6).

In the years following *Iqbal* and *Twombly*, this Court has routinely dismissed duplicative purported claims for breach of the implied covenant.  In *Hadami, S.A. v. Xerox Corp.*, 272 F Supp 3d 587 (S.D.N.Y. 2017), for example, this Court held that, "when a plaintiff claims a breach of the implied covenant of good faith and fair dealing based on the same facts as a breach of contract claim, the claim for the breach of the implied covenant *must* be dismissed as duplicative of the breach of contract claim."  *Id.* at 598 (citing *Amcan Holdings, Inc. v. Canadian Imperial Bank of Commerce*, 894 N.Y.S.2d 47 (1st Dep't 2010)) (emphasis added).  The Second Circuit routinely affirms those dismissals.  *See Nakahata v New York-Presbyt. Healthcare Sys., Inc.*, 723 F.3d 192, 203-04 (2d Cir. 2013) ("The claim for breach of an implied covenant of good faith and fair dealing was properly dismissed insofar as it duplicates the breach of contract claims.").

The question before the Court on SellerX's motion is therefore not whether Plaintiff's implied covenant claim meets the minimum pleading standards set forth in *Iqbal* and *Twombly*. The question is whether Plaintiff's claim is duplicative of its breach of contract claim.  On that question, Plaintiff's opposition confirms that the two claims are based on the same facts and seek the same relief.  To focus on Plaintiff's own purportedly illustrative example, the APA explicitly states that SellerX will "make all possible good faith efforts to achieve income levels that will trigger the Deferred Payment," including "expanding into new markets[.]"  (F.A.C., Ex. A ¶ 14(b).)  Plaintiff claims that SellerX breached the APA by not expanding into new markets. (F.A.C. ¶ 84(D).)  Plaintiff now claims that it was a breach of the implied covenant for SellerX

not to expand specifically into the *European* market.  (Plaintiff's M.O.L. at 15-16.)  To argue that these two claims are not duplicative is silly, as the latter purported obligation is merely a subset of the former.

Plaintiff similarly argues that SellerX breached the implied covenant by ignoring Plaintiff's "strategy," which Plaintiff purportedly explained to SellerX "several times and in excruciating detail."  (Plaintiff's M.O.L. at 17.)  But what was Plaintiff's purported strategy, exactly?  According to the F.A.C., "[e]xecuting that strategy required maintaining inventory sufficient to meet customer demand and investing in advertising to maintain market share, knowing that there would be periods of little or no profitability, in order to reap windfall benefits when the competition later exhausted itself."  (F.A.C. ¶ 40.)  Again, Plaintiff's breach of contract claim is based on these same purported obligations.  (*Id.* ¶ 84(B) and (C) (alleging that SellerX breached the APA by failing to maintain sufficient inventories and advertising).)

There is no dispute that SellerX agreed, in the APA, to use all possible good faith efforts to meet Chalk City's net sales and EBITDA targets.  SellerX thus had an *explicit* duty of good faith.  Having brought a claim against SellerX for its alleged breach of that duty, Plaintiff cannot also maintain its wholly duplicative claim for breach of the implied covenant of good faith and fair dealing.

**III.   Plaintiff Is Bound by the Limitation of Liability Provision in the APA.**

Finally, there is no support in the APA or the caselaw for Plaintiff's attempt to "claw back" the Chalk City assets pursuant to Paragraph 11(a) of the APA.  Plaintiff's argument is as follows: (1) SellerX breached Paragraph 14(b) of the APA by not making all possible good faith efforts to achieve income levels sufficient to trigger the Deferred Payment; and (2) as a result, SellerX breached Paragraph 11(a) of the APA by either (a) failing to timely complete the Deferred Payment, or (b) breaching a term of the APA (specifically, Paragraph 14(b)).

(Plaintiff's M.O.L. at 19-21.)  Plaintiff is only able to make its flawed argument by disregarding the plain language of Paragraph 14(b), which states that "[Plaintiff]'s **sole remedy** for [SellerX]'s breach of this section, will be complete payment of the full possible Deferred Payment."  (F.A.C., Ex. A ⁋ 14(b) (emphasis added).)  This sole remedy provision would be rendered meaningless if Plaintiff were allowed to transform a purported breach of Paragraph 14(b) into a purported breach of Paragraph 11(a).  Yet Plaintiff tries to do exactly that.  (*See*, *e.g.*, Plaintiff's M.O.L. at 20 ("On its own, Defendant's blatant breach of Section 14(b) qualifies as an event of Buyer Default under Section 11(a)[.]".)

Plaintiff's proposal to ignore the sole remedy provision violates black letter rules of contract interpretation, including that every provision of a contract should be given meaning and that specific contract language prevails over general language.  *See*, *e.g.*, *GSI Commerce Sols., Inc.* 618 F.3d at 214 (quoting *Paneccasio v. Unisource Worldwide, Inc.,* 532 F.3d 101, 111 (2d Cir. 2008)).  In order to have any meaning at all, the specific language of Paragraph 14(b) concerning the sole remedy for any purported breach of that provision must prevail over the general language in Paragraph 11(a) concerning other, unspecified breaches of the APA.

Moreover, parties to a civil lawsuit are free to fashion how damages are to be determined.  (*See* SellerX's M.O.L. at 21-22 (citing cases).)  As held by the Second Circuit, "New York courts have routinely enforced liability-limitation provisions when contracted by sophisticated parties, recognizing such clauses as a means of allocating economic risk in the event that a contract is not fully performed."  *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 138 (2d Cir. 2016).  Plaintiff ignores this well-settled principle and asserts, based on no authority whatsoever, that Rule 12(b)(6) "does not provide a basis for a defendant to dictate at the pleading stage that a plaintiff is not entitled to a particular remedy, contractual or otherwise."  (*Id.* at 21.)  Plaintiff is wrong.  In *Morgan Stanley & Co. v. Peak Ridge Master SPC LTD*, 930 F. Supp. 2d 532 (S.D.N.Y. 2013), the plaintiff moved to dismiss the defendant's counterclaims in light of a

9

liability limitation provision.  *Id.* at 544.  This Court, after noting that limitation of liability

provisions are enforceable, dismissed the defendant's allegations seeking recovery for

consequential, incidental, punitive, or special damages, including lost profits.  *Id.* at 544-45.

Plaintiff's *ipse dixit* assertion that the Court cannot limit its remedies at the pleading stage is thus

incorrect, and the Court should therefore dismiss Plaintiff's demand for return of the Chalk City

assets under APA Paragraph 11(a).

## **CONCLUSION**

For all of the reasons set forth above, SellerX respectfully requests that the Court stay this

action pending arbitration.  In the alternative, SellerX respectfully requests that the Court dismiss

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing and Plaintiff's

demand for the return of ownership and control of Chalk City.


Dated: New York, New York
      April 26, 2023

Respectfully submitted,

**BROWN LAW GROUP, PLLC**

By:  */s/ Daniel J. Brown*
     Daniel J. Brown, Esq.
     Judd R. Spray, Esq. (Of Counsel)
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Tel: (212) 485-9805
Dan@BrownLawGroupLLC.com
*Attorneys for Defendant SellerX Eight GmbH*

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2023, I caused the foregoing document to be served, via

CM/ECF, to all counsel of record in this action.


Dated: New York, New York
      April 26, 2023

Respectfully submitted,


**BROWN LAW GROUP, PLLC**

By: *Daniel J. Brown*
     Daniel J. Brown, Esq.

     Judd R. Spray, Esq. (Of Counsel)
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Tel: (212) 485-9805
Dan@BrownLawGroupLLC.com
*Attorneys for Defendant SellerX Eight GMbH*